# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

**JEFFREY C. STELTER,**

                             **Plaintiff,**               **5:12-cv-93
(GLS)**

       **v.**

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                          **Defendant.**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Office of Peter W. Antonowicz | PETER W. ANTONOWICZ, ESQ. |
| 148 West Dominick Street | |
| Rome, NY 13440 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | MICHELLE L. CHRIST |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Jeffrey C. Stelter challenges the Commissioner of Social Security's denial of his claim for a period of disability and Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Stelter's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

### II. Background

On March 12, 2008, Stelter filed an application for DIB under the Social Security Act ("the Act"), alleging disability since December 31, 2004. (*See* Tr.[1] at 96, 139-42.)[2]  After his application was denied, (*see id.* at 98-103), Stelter requested a hearing before an Administrative Law Judge (ALJ), which was held on November 17, 2009.  (*See id.* at 55-94, 104-05.) On April 16, 2010, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 11.)

[2] Stelter also filed an application for Supplemental Security Income (SSI) on March 12, 2008, but in his Complaint, he only appeals the ALJ's decision denying DIB.  (*See* Compl.; Tr. at 135-38.)

upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 12-17, 25-41.)

Stelter commenced the present action by filing his Complaint on January 19, 2012 wherein he sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 10, 11.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 13, 15.)

### III. <u>Contentions</u>

Stelter contends that the Commissioner's decision was the product of legal error and is unsupported by substantial evidence. (*See* Dkt. No. 13 at 9-20.) Specifically, Stelter claims that the ALJ: (1) committed error in determining his residual functional capacity (RFC) for nonexertional activities by improperly weighing the opinion evidence; and (2) improperly assessed his credibility. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (*See* Dkt. No. 15 at 4-12.)

### IV. <u>Facts</u>

The court adopts the parties' undisputed factual recitations. (*See*

Dkt. No. 13 at 3-6; Dkt. No. 15 at 2.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under

42 U.S.C. § 405(g) is well established and will not be repeated here.  For a

full discussion of the standard and the five-step process by which the

Commissioner evaluates whether a claimant is disabled under the Act, the

court refers the parties to its previous decision in *Christiana v. Comm'r of

Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y.

Mar. 19, 2008).

## VI.  Discussion

### A.    Weighing Opinion Evidence

Stelter argues that the ALJ did not properly evaluate the opinion

evidence and, thus, improperly determined his RFC[3] for nonexertional

activities.  (*See* Dkt. No. 13 at 9-14.)  In particular, Stelter argues that the

ALJ should have accorded greater weight to the opinions of treating

psychiatrist Jonathan Ecker than those of the consultative examiner, Dr.

---

[3] A claimant's RFC "is the most [he] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).  An ALJ's RFC determination must be supported by substantial evidence in the record.  *See* 42 U.S.C. § 405(g).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Kristen Barry.  (*See id.* at 9-14.)[4]  According to Stelter, the medical

evidence of record supports Dr. Ecker's opinion of Stelter's limitations

"after he pursued consistent treatment in 2009."  (*Id.* at 13-14.)[5]  The court

disagrees.

Controlling weight will be given to a treating source's opinion on the

nature and severity of a claimant's impairments where it is "well-supported

by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with the other substantial evidence."  20 C.F.R.

§ 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

When a treating source's opinion is given less than controlling weight, the

ALJ is required to consider the following factors: the length, nature and

extent of the treatment relationship; the frequency of examination;

evidentiary support offered; consistency with the record as a whole; and

---

[4] Stelter does not appear to challenge the ALJ's determination that he could perform the physical demands of light work.  (*See* Tr. at 31.)  In any event, the ALJ's reliance on the opinion of consultative examiner Kalyani Ganesh was appropriate and his determination of Stelter's physical RFC is supported by substantial evidence.  (*See id.* at 33, 36.)

[5] Stelter contends that the medical evidence of record "does not assist [him] in proving disability prior to his date last insured," but demonstrates that he suffered disabling limitations for the purposes of SSI once he "stopped abusing intoxicating substances and commenced steady psychiatric treatment in 2009."  (Dkt. No. 13 at 13.)  Notably, Stelter has not appealed the ALJ's denial of SSI.  (*See* Compl.)  Nevertheless, as discussed below, the ALJ's decision that Dr. Ecker's opinions were not entitled to controlling weight and his RFC determination are supported by substantial evidence.

specialization of the examiner.  20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ

must provide "'good reasons' for the weight given to the treating source's

opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal

quotation marks and citations omitted).  "Nevertheless, where the evidence

of record permits [the court] to glean the rationale of an ALJ's decision," it

is not necessary that the ALJ "have mentioned every item of testimony

presented to him or have explained why he considered particular evidence

unpersuasive or insufficient to lead him to a conclusion of disability." *Id*.

(internal quotation marks and citation omitted).

Here, in December 2009, Dr. Ecker opined that Stelter suffered major

depression, recurrent, as well as alcohol and drug dependence, which

were in remission.  (*See* Tr. at 722-23.)  According to Dr. Ecker, due to

these impairments, Stelter suffered limitations in his understanding and

memory, ability to sustain concentration and persistence, social interaction,

and adaption.  (*See id.* at 723.)  Dr. Ecker further opined that Stelter

maintained a "good" ability to relate to family and acquaintances, but only a

"fair" ability to follow rules, deal with the public, use judgment, relate to

authority figures and function independently.  (*See id.* at 725.)  In addition,

Stelter retained a "fair" ability to understand, remember, and carry out

detailed instructions as well as simple instructions, maintain his personal appearance, behave in an emotionally stable manner, relate predictability in social situations, and demonstrate reliability.  (*See id.* at 725-26.) Further, Stelter's ability to deal with stress, maintain attention and concentration, and understand and carry out complex instructions was poor.  (*See id.* at 725.)  Lastly, Dr. Ecker completed an affective disorder questionnaire and opined that Stelter suffered anhedonia, appetite disturbance with change in weight, sleep disturbance, decreased energy, feelings of guilt, difficulty concentrating, and marked difficulties in maintaining social functioning.  (*See id.* at 728.)  The ALJ considered these opinions and afforded them "little weight" noting that Dr. Ecker had only examined Stelter on three occasions and there were inconsistencies in his reports, including the misstatement that Stelter was last in rehabilitation in 2002, when he had actually last entered rehabilitation in 2007.  (*Id.* at 35-36; *see id.* at 71, 368-70, 650.)

On the other hand, the ALJ gave "[g]reat weight" to the opinion of Dr. Barry because it was consistent with the medical evidence of record.  (*Id.* at 36.)  Dr. Barry examined Stelter in May 2008 and found his overall manner of relating and social skills adequate, speech fluent and clear,

thought process coherent and goal directed, affect somewhat dysphoric, mood dysthymic, intellectual functioning in the average range, and attention and concentration, as well as recent and remote memory skills, intact.  (*See id.* at 488-92.)  Based on this examination, Dr. Barry opined that Stelter could follow and understand simple directions and maintain attention and concentration.  (*See id.* at 491.)  Thereafter, in January 2010, Dr. Barry again examined Stelter and found his overall manner of relating and social skills fair, speech fluent and clear, thought process coherent and goal directed, affect a little anxious and dysphoric, mood dysthmic, intellectual functioning to be in the low average to average range, and attention and concentration as well as recent and remote memory intact. (*See id.* at 729-36.)  According to Dr. Barry, Stelter could understand, remember, and carry out simple instructions, but his ability to make judgments on simple work-related decisions was mildly[6] impaired.  (*See id.* at 734.)  Dr. Barry further opined that Stelter's ability to understand, remember, and carry out complex instructions was moderately[7] impaired

_____

[6] "Mild" is defined as "a slight limitation . . . but the individual can generally function well."  (Tr. at 734.)

[7] "Moderate" is defined as "more than a slight limitation . . . but the individual is still able to function satisfactorily."  (Tr. at 734.)

as was his ability to interact appropriately with the public, supervisors, and co-workers, and respond appropriately to usual work situations and changes in a routine work setting.  (*See id.* at 734-35.)

Contrary to Stelter's allegations, (*see* Dkt. No. 13 at 9-10), in making his RFC determination, the ALJ specifically considered the limitations that Dr. Ecker indicated for Stelter, (*see* Tr. at 34-35).  The ALJ also specifically noted that Stelter had received outpatient treatment through the Syracuse VA Medical Center since 1995.  (*See id.* at 32-33.)  The ALJ did not err in considering the length of Dr. Ecker's treatment relationship with Stelter—which began in August 2009—and the frequency of his examination.  (*See id.* at 690); 20 C.F.R. § 404.1527(c)(2)(i).  Although Stelter argues that the ALJ failed to consider Dr. Ecker's supervision of his treatment prior to this time, (*see* Dkt. No. 13 at 10), it appears that Stelter was under the supervision of another psychiatrist until at least March 27, 2009, (*see* Tr. at 672-74, 680, 690).  Thus, even considering this prior period of involvement in Stelter's treatment, Dr. Ecker's treatment relationship with Stelter was relatively brief.

Notably, consultative physicians' opinions are generally given less weight than those of treating physicians because "consultative exams are

often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1992) (internal quotation marks and citation omitted).  Here, however, Dr. Barry examined Stelter on two occasions and both examinations included a history of the patient and a full mental status examination.  (*See id.* at 488-92, 729-33.)  Stelter argues that the ALJ failed to properly consider the specialization of the physicians in weighing their opinions.  (*See* Dkt. No. 13 at 13); 20 C.F.R. § 404.1527(c)(5).  However, Dr. Ecker and Dr. Barry are both mental health specialists and the ALJ explicitly acknowledged that Dr. Ecker is a psychiatrist.  *See* Tr. at 33.  In addition to Dr. Barry's opinion, the opinion of state agency review psychologist A. Hochberg also supports the ALJ's RFC determination.  (*See id.* at 502-18); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.")

Finally, the treatment notes of record support the ALJ's determination that Stelter could perform simple work, adequately relate to others, and

respond to usual work situations and changes.  (*See* Tr. at 31-32.)  For example, in a vocational rehabilitation assessment taken in November 2007 Stelter reported that his strengths were his ability to follow through, work by himself, and learn quickly and stated that he was a hard worker and worked well with others.  (*See id.* at 433.)  In addition, on a mental health assessment he reported that his difficulties understanding, concentrating, or remembering seemed to improve with continued sobriety. (*See id.* at 439.)  Further, May 2009 treatment notes reflect that Stelter had "performed well in [various] work placements, working up to [one] year at a time, until eventual relapses result[ed] in his being discharged from the program."  (*Id.* at 651.)

In sum, the ALJ considered the appropriate factors in weighing the medical opinions, and in so doing, arrived at an RFC determination that is supported by substantial evidence.  Accordingly, the ALJ's RFC assessment is affirmed.

**B.    Credibility Determination**

Stelter also claims that the ALJ improperly evaluated his credibility. (*See* Dkt. No. 13 at 15-20.)  According to Stelter, because his "allegations of significant psychiatric symptoms have been consistent since embarking

on regular psychiatric treatment in 2009," and were consistent with the

diagnoses of, and found credible by, his treating physicians, the ALJ

should have given them greater weight.  (*Id.* at 16-17.)  Further, Stelter

argues that the ALJ: (1) misstated his abilities;[8] (2) "failed to even consider

[his] statements regarding limitations;" (3) overstated the significance of

certain activities of daily living; and (4) failed to offer a specific explanation

as to how his activities of daily living were inconsistent with his complaints.

(*Id.* at 18-19.)  The Commissioner counters, and the court agrees, that the

ALJ properly assessed Stelter's credibility.  (*See* Dkt. No. 15 at 10-12.)

Once the ALJ determines that the claimant suffers from a "medically

determinable impairment[] that could reasonably be expected to produce

the [symptoms] alleged," he "must evaluate the intensity and persistence of

those symptoms considering all of the available evidence; and, to the

extent that the claimant's [subjective] contentions are not substantiated by

the objective medical evidence, the ALJ must engage in a credibility

inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal

---

[8] Notably, Stelter does not cite any specific misstatements that the ALJ made regarding his abilities, but, rather, argues that "the ALJ's recitation of [his] abilities does not reflect any familiarity with [his] testimony or the paperwork that he completed in support of his application." (Dkt. No. 13 at 18.)

quotation marks and citations omitted).  In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements."  SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996).  Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms."  *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. §§ 404.1529(c)(3)(I)-(vi), 416.929(c)(3)(I)-(vi)).

Here, the ALJ determined that Stelter's "statements concerning the intensity, persistence and limiting effects of [his] symptoms" were not credible because they were inconsistent with the objective medical evidence, and his activities of daily living.  (Tr. at 35.)  Specifically, the ALJ noted that Stelter admittedly retained the ability to walk a mile and lift ten to fifteen pounds at least once or twice, lived alone, and did his own laundry. (*See id.* at 35, 63, 78, 82.)  Further, the ALJ noted that Stelter participated in activities involving interaction with others, including volunteering at the

13

VA Medical Center and attending two group counseling sessions as well as Alcoholics Anonymous meetings.  (*See id.* at 35, 79-80, 82-83.)  Finally, the ALJ considered Stelter's conservative, non-aggressive treatment history and inconsistencies between the medication side effects he reported in his treatment records and his testimony of such side effects. (*See id.* at 35, 85, 610, 687.)  Thus, the ALJ sufficiently explained his reasons for discounting Stelter's testimony with respect to his physical and mental abilities.

Stelter's contention that the ALJ failed to consider his statements regarding limitation is flatly incorrect.  (*See* Dkt. No. 13 at 18.)  The ALJ explicitly noted Stelter's reported "left shoulder injury, depression, borderline personality disorder, anxiety disorder and attention deficit disorder," as well as high blood pressure, hearing problems, and low back problems.  (Tr. at 32-33.)  Further, the ALJ considered the limitations Stelter attributed to his impairments, including limited left shoulder movement, a limited ability to sit or stand for long periods, and, at times, being unable to get out of bed due to depression and anxiety.  (*See id.* at 32.)  In addition, the ALJ reviewed Stelter's medical records and noted his complaints to medical providers.  (*See id.* at 32-35.)  For instance, the ALJ

14

noted that, in December 2009, Dr. Ecker reported that Stelter's symptoms included "depressed mood, trouble sleeping, decreased appetite, decreased energy, feelings of guilt and decreased concentration."  (*Id.* at 34.)

Because the ALJ properly considered "the objective medical evidence in the record, [Stelter's] demeanor, and other indicia of credibility," and fulfilled his duty to articulate with sufficient specificity his credibility determination, there is no reason to disturb the ALJ's credibility assessment.  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted); (*see* Tr. at 32-36.)

**C.**   **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Stelter's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

15

**IT IS SO ORDERED.**

April 19, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court